UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORI CURRY<br>    Plaintiff<br><br>v.<br><br><br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC<br>    Defendant | CIVIL ACTION<br><br>COMPLAINT<br><br>JURY TRIAL<br>CLAIMED<br><br><br><br>AUGUST 26, 2009 |

## COMPLAINT

### I. INTRODUCTION

1. This is a suit brought by a consumer who has been harassed and abused by the Defendant collection agency. This action is for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Creditor Collection Practices Act ("CCPA"), Conn. Gen. Stat. § 36a-645 *et seq.*, and for intentional infliction of emotional distress.

### II. PARTIES

2. The plaintiff, Lori Curry, is a natural person residing in Groton, Connecticut.

3. The defendant, Portfolio Recovery Associates, LLC ("Portfolio"), is a limited liability company located in Virginia that is in the business of purchasing and collecting debts.

### III. <u>JURISDICTION</u>

4. Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692k(d), Fed. R. Civ. P. 18(a), and 28 U.S.C. § 1367.

5. This Court has jurisdiction over Portfolio because it engages in debt collection activities within Connecticut.

6. Venue in this Court is proper, as the Plaintiff is a resident of Connecticut and the acts complained of occurred in this state.

### IV. <u>FACTUAL ALLEGATIONS</u>

7. Plaintiff had accounts with Wal-Mart and Capital One, and the debts associated with those accounts were subsequently purchased by Portfolio.

8. On or around April 9, 2009, a Portfolio representative telephoned the residence of Plaintiff's daughter and son-in-law and spoke with Plaintiff's son-in-law.

9. Plaintiff was not living and never had lived at her daughter's and son-in-law's residence to which the call was placed.

10. During that conversation, the Portfolio representative asked to speak with Plaintiff, and Plaintiff's son-in-law responded that Plaintiff did not live at his residence, and he asked what they were calling about and how they got his phone number.

11. The Portfolio representative replied that she was calling about a personal business matter, and she said that Plaintiff had given Portfolio his number.

12. Plaintiff's son-in-law found it unlikely that Plaintiff would have given Portfolio the number that they had called, since he had only recently opened that telephone line, and he had opened it mainly for the purpose of internet access.

13. Plaintiff's son-in-law gave the Portfolio representative Plaintiff's home phone number, and he asked Portfolio not to call his residence anymore.

14. That same day, Plaintiff's son-in-law called Plaintiff and gave her the number the Portfolio representative had given him, and Plaintiff called that number soon afterwards and spoke to a Portfolio representative named "Danielle" and an additional Portfolio representative named "Ms. Flowers."

15. During those conversations, Plaintiff asked said representatives why Portfolio was calling the residence of her son-in-law and daughter, and she demanded that Portfolio cease contacting their residence regarding her Wal-Mart and Capital One account.

16. Approximately three weeks later, a Portfolio representative called the residence of Plaintiff's son-in-law and daughter -- the same number that it had called before -- and a Portfolio representative spoke with Plaintiff's son-in-law.

17. During that conversation, Plaintiff's son-in-law told the representative that Plaintiff did not live at his residence, and he asked how Portfolio had gotten his phone number.

18. The Portfolio representative told him that Plaintiff had given Portfolio his phone number.

19. Plaintiff's son-in-law told that representative that Plaintiff did not live at his residence, and he hung up.

20. Plaintiff was humiliated by the fact Portfolio had placed phone calls to the residence of her son-in-law and daughter and had spoken with her son-in-law, and as a result of those calls, Plaintiff had to explain to her son-in-law and her daughter that she

had financial troubles and would be filing for bankruptcy, which in turn caused Plaintiff considerable emotional distress.

## V. COUNT ONE
**Fair Debt Collection Practices Act**

21. Plaintiff incorporates Paragraphs 1-20.

22. Portfolio violated the FDCPA, including the following respects:

    a.  Portfolio violated 15 U.S.C. § 1692c(b) by contacting third parties without having Plaintiff's permission to do so;

    b.  Portfolio violated 15 U.S.C. § 1692e(10) by falsely representing that Plaintiff had given it the telephone number of Plaintiff's son-in-law;

    c.  Portfolio violated 15 U.S.C. § 1692d by engaging in conduct as described above, the consequence of which was to harass, oppress, or abuse the plaintiff; and

    d.  Portfolio violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt as described above.

23. For Portfolio's violations of the Fair Debt Collection Practices Act as described above, the Plaintiff is entitled to recover her actual damages (including emotional distress related damages), statutory damages of $1,000, and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k.

## VI. COUNT TWO
**Creditor Collection Practices Act**

24. Plaintiff incorporates Paragraphs 1-20.

4

25. Portfolio violated the CCPA and the regulations promulgated thereunder by the Connecticut Department of Banking, as follows:

   a. Portfolio violated Conn. Agencies Reg.§ 36a-647-3(b) by contacting third parties without having Plaintiff's permission to do so;

   b. Portfolio violated Conn. Agencies Reg.§ 36a-647-6 by falsely representing that Plaintiff had given it the telephone number of Plaintiff's son-in-law; and

   c. Portfolio violated Conn. Agencies Reg.§ 36a-647-5 by engaging in conduct as described above, the consequence of which was to harass, oppress, or abuse the plaintiff.

26. For Portfolio's violations of the Creditor Collection Practices Act as described above, the Plaintiff is entitled to recover her actual damages (including emotional distress related damages), statutory damages of $1,000, and reasonable attorney's fees, pursuant to Public Act No. 07-176.

## VII. COUNT THREE
### Intentional Infliction of Emotional Distress

27. Plaintiff incorporates Paragraphs 1-20.

28. Portfolio knew, or reasonably should have known, that its conduct would likely cause emotional distress to Plaintiff.

29. Portfolio's conduct did cause Plaintiff to suffer emotional distress, embarrassment, shame, stress and anxiety.

30. Portfolio's actions were willful, wanton and malicious, in that it intended to cause Plaintiff's distress to induce plaintiff to pay the debt, in hopes that plaintiff would pay in order to relieve the stress.

WHEREFORE, the Plaintiff prays for the following relief:

Actual damages (including emotional distress damages), statutory damages, and attorney's fees and costs pursuant to 15 U.S.C. § 1692k and Public Act No. 07-176; and such other relief as this Court deems appropriate.

**PLAINTIFF, LORI CURRY**

By: _____
Daniel S. Blinn, ct02188
Matthew W. Graeber, ct27545
dblinn@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408; Fax. (860) 571-7457